UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MENDOSA GARCIA-MARCOS,

        Petitioner,                Case Number: 05-10332
                                               Honorable David M. Lawson

v.

BLAINE LAFLER,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

The petitioner, Mendosa Garcia-Marcos, presently confined at the Carson City Correctional Facility in Carson City, Michigan, has filed a *pro se* application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is incarcerated in violation of his constitutional rights. The petitioner pleaded guilty to possession with intent to deliver 650 grams or more of cocaine in violation of Michigan Compiled Laws § 333.7401(2)(a)(i) (2002) and was sentenced pursuant to a plea agreement to fifteen to twenty-five years imprisonment. The petitioner contends that he is in custody in violation of federal law because his plea was involuntary and not intelligently entered. It appears that the basis of the petitioner's claim lies in his claimed misapprehension of the nature and effect of the sentencing agreement limiting the length of his sentence. The respondent has filed a response to the petition asserting that the claims lack merit because the decision of the Michigan Court of Appeals did not amount to an objectively unreasonable application of clearly established Supreme Court law. The Court agrees, and therefore the petition will be denied.

I.

The petitioner's troubles began with the execution of a search warrant at his residence in Muskegon Heights, Michigan on October 10, 2002. Cocaine was discovered in a truck parked at

the home, and the petitioner was charged with possessing 650 grams or more of cocaine with intent to distribute it. At the time, that crime carried a mandatory minimum sentence of twenty years in prison. On February 11, 2003, the petitioner pleaded guilty to that offense in the Muskegon County circuit court with an agreement that in exchange for his cooperation, the minimum sentence would be reduced to fifteen years.

At the plea hearing, the petitioner, a Mexican national who spoke no English, spoke through an interpreter. The petitioner admitted to parking a truck at the home, knowing that it contained 650 grams or more of cocaine, and intending to deliver that cocaine. Plea Hr'g Tr. at 13-14. Before that, the following exchange took place with the state judge:

> THE COURT:   Thank you.
> Both counsel and I have to remind ourselves that a translation is taking place. So we will have to speak in fairly abbreviated phrases with some pauses just so the translation can be done. We should probably start at this point. So, go right ahead.
> MS. BAKER [state prosecutor]:  Thank you, Your Honor.
> It's my understanding that the Defendant will be pleading guilty as charged. This is –
> THE COURT:   Okay. Probably Ms. Sotomayor should translate that.
> MS. BAKER:   With the understanding that this is a 20-year minimum sentencing offense, and the prosecution or my office has offered a recommendation of a 15-year maximum in return for the Defendant's full cooperation and testimony against co-defendants.
> THE COURT:   Actually, it would be the minimum sentence would not exceed 15 years.
> MS. BAKER:  That is correct, Your Honor.
> THE COURT:   Is that your understanding, Mr. Fisher?
> MR. FISHER [defense counsel]:   Yes.
> MS. BAKER:   The Information reads that Marcos Mendoza-Garcia, on or about October 10, 2002, in the City of Muskegon Heights, at 2101 Seventh Street, County of Muskegon, State of Michigan, did possess with intent to deliver 650 or more grams of a mixture containing the controlled substance cocaine. This is known as controlled substance, deliver/manufacture 650 or more grams. It is a felony punishable by life or any term of years, not less than 20 years in prison.
> . . .
> THE COURT:   Do you understand the charge of possession with intent to deliver 650 or more grams of cocaine?
> THE DEFENDANT:   Yes.

THE COURT:   You are advised that that offense is a felony which carries a maximum possible sentence of life in prison or any term of years in prison.  The statute requires the Court to impose a minimum sentence of incarceration of at least 20 years.

Do you understand that?
THE DEFENDANT:   Yes.

. . .

THE COURT:   You have one of four pleas available to you under the law.  The first plea is nolo contendere.  It is commonly called a no-contest plea.  It is a plea in which the defendant elects not to contest the charge brought against him by the prosecutor.  If offered to the Court and accepted, it will be treated as a plea of guilty.

Your second choice is a plea of guilty.  Your third choice is a plea of not guilty.  Your fourth choice is a stand-mute plea.  A person is mute when he does not speak.  Thus, while you're being arraigned, if you do not speak, a plea of not guilty will be continued on your behalf.

Sir, do you understand these pleas?
THE DEFENDANT:   Yes.
THE COURT:   Do you know what it means to "waive" a constitutional right?
THE DEFENDANT:   (Whereupon, no response.)
THE COURT:   That means to give up a right.
THE DEFENDANT: Yes.
THE COURT: You are advised that in the event of a plea of guilty or a finding of guilty or a plea of nolo contendere, you and your attorney will be given a reasonable opportunity to advise the Court of any circumstances you believe the Court should consider in imposing sentence.

Sir, are you prepared at this time to plead?
THE DEFENDANT:   Yes.
THE COURT: If so, what is your plea to this charge?
THE DEFENDANT:   Guilty, sir.
THE COURT: Sir, you are pleading guilty to the offense of possession with intent to deliver 650 or more grams of cocaine.  I again remind you that that offense is a felony which carries a maximum possible sentence of life in prison or any term of years in prison.  The statute requires the Court to impose a minimum sentence of at least 20 years in prison.

If your plea of guilty is accepted, you will not have a trial of any kind.  So you give up the rights you would have at a trial, including the rights to trial by a jury, to trial by the Court without a jury if you choose and the prosecution and Court consent, to be presumed innocent until proven guilty, to have the prosecutor prove beyond a reasonable doubt that you are guilty, to have the witnesses against you appear at the trial, to question the witnesses again you, to have the Court order any witnesses you have for your defense to appear at the trial, to remain silent during the trial, to not have your silence used against you, and to testify at the trial if you want to testify.

>Sir, do you understand that by pleading guilty you are giving up all of those rights?
>
>THE DEFENDANT:  Yes.
>
>. . .
>
>THE COURT:   The prosecutor has indicated that there is a plea agreement. Apparently the plea agreement is as follows:
>
>In exchange for Defendant's plea of guilty to this charge and his cooperation with law enforcement and truthful testimony against certain co-defendants, the prosecution will recommend to the Court at time of sentencing that Defendant's minimum sentence of incarceration not exceed 15 years in prison.  The Court has stated for the record that it will accept that recommendation if the plea agreement is complied with.
>
>Ms. Baker, is that your understanding of the plea agreement?
>
>MS. BAKER: It is, Your Honor.
>
>THE COURT: Mr. Fisher, is that your understanding?
>
>MR. FISHER:   Yes.
>
>THE COURT: Mr. Mendoza-Garcia, is that your understanding of the plea agreement?
>
>THE DEFENDANT: Yes.
>
>THE COURT: Has anyone promised you anything beyond what is in the plea agreement to get you to plead guilty?
>
>THE DEFENDANT: No.

Plea Hr'g Tr. at 4-6, 8-12.

On March 21, 2003, the trial court sentenced the petitioner to a prison term of fifteen to twenty-five years.  The following colloquy took place at the petitioner's sentencing hearing:

>THE COURT:  All right.  Do the People have anything to say to the Court before sentence is imposed?
>
>MR. KOSTRZEWA [state prosecutor]: Yes.  Consistent with the plea agreement, Your Honor, we, at this time, recommend that the Court sentence to a term of incarceration in the Department of Corrections of 15 years on the minimum.  This recommendation we know is below the 20-year mandatory minimum.  That recommendation is based upon our agreement with Mr. Mendoza-Garcia that he cooperate and testify against any and all co-defendants in this matter. We know that he's being sentenced today prior to that testimony, but our expectation is that if called upon to do so, he would in fact testify truthfully at a future date.
>
>And that's all I have.  Thank you, Judge.

> THE COURT: Does defense counsel have anything to say to the Court before sentence is imposed? She will have to translate that question?
>
> MR. POTUZNIK [defense counsel]: My comment is, Your Honor, I agree with what the prosecution just said, and of course we respectfully ask that the minimum be something less than 15 years, and that my client has a clean record and we would hope he would be given that consideration.
>
> THE COURT: Mr. Mendoza-Garcia, do you have anything you want to say to the Court before sentence is imposed?
>
> THE DEFENDANT: I am very sorry, and please keep in mind that I was utilized by somebody else. I have no money. I have no assets. I have nothing. That's it.
>
> THE COURT: Thank you.
>     The guidelines are 27 months to 45 months. However, the statute requires a minimum mandatory sentence of at least 20 years. However, the Court has agreed to the prosecutor recommendation [sic] of a minimum sentence of 15 years.
>
> MR. POTUZNIK: I don't agree with what you just said, Judge, I'm sorry, but I thought the agreement was it would be no–the minimum would be no more than. I thought you just said it would be 15.
>
> THE COURT: All right. No more than 15 years.
>
> MR. POTUZNIK: Okay.
>
> THE COURT: Okay. We can correct that. The recommendation was that the minimum sentence not exceed 15 years; that's correct. . . . Once again, I will accept the prosecutor's recommendation that the minimum sentence not exceed a figure five years below that required by statute.

Sentence Hr'g Tr. at. 5-7, Mar. 21, 2003.

    Nearly a year later, the petitioner filed a motion to withdraw his guilty plea on March 18, 2004. It appears that the petitioner alleged that he was misled by defense counsel into believing that his minimum sentence would be less than fifteen years. The trial court denied the motion in a

written order dated May 4, 2004. Subsequently, the petitioner filed an application for leave to appeal in the Michigan Court of Appeals presenting as his sole claim: "Mr. Garcia-Marcos is entitled to plea withdrawal where his plea was not voluntary or intelligent." The court of appeals denied the application for leave to appeal. *People v. Garcia-Marcos*, No. 255707 (Mich. Ct. App. July 21, 2004). The petitioner then appealed that decision to the Michigan Supreme Court, raising the same claim. The state supreme court denied leave to appeal on March 29, 2005. *People v. Garcia-Marcos*, 472 Mich. 878, 693 N.W.2d 818 (2005).

Thereafter, the petitioner filed the present petition for a writ of habeas corpus, presenting the same claim as presented in the state courts, plus a new claim of sorts by mentioning on his petition form "ineffective assistance of appellant attorney." That claim is not briefed or even mentioned again anywhere else in the petition. The petitioner admits in his petition that the claim is unexhausted since it was not raised in any of his state courts papers, and since there is no discussion of this second claim, the Court will deem it abandoned. *See Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003) (holding that an issue is abandoned if a party does not present any argument respecting the issue in his brief). The Court will limit its discussion to the petitioner's claim regarding voluntariness of his plea.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir.1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially

-7-

> indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11; *see also Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

The petitioner argues that the state courts' determination of his motion to withdraw his guilty plea unreasonably applies federal precedent because his misapprehension of the consequences of his guilty plea renders his plea involuntary and unknowing, and therefore the plea is constitutionally invalid. A guilty plea must be supported by "an affirmative showing that it was intelligent and voluntary." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). The Sixth Circuit has held that:

> A plea is valid if it is entered voluntarily and intelligently as determined under the totality of the circumstances. *Brady v. United States*, 397 U.S. 742, 749 (1970). The constitution requires the circumstances to reflect that the defendant was informed of

-8-

>all the direct consequences of his plea. *Id.* A plea may be involuntary if the defendant does not understand the nature of the constitutional rights he is waiving, or unintelligent if the defendant does not understand the charges against him. *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976).

*United States v. Ormsby*, 252 F.3d 844, 849 (6th Cir. 2001). "[F]or a defendant's plea of guilty to be voluntary, the defendant must be aware of the maximum sentence that could be imposed." *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994).

A showing of intelligence and voluntariness generally is made by the state's production of a transcript of state court proceedings to establish that the plea was made voluntarily. *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004) (citing *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993)). The Supreme Court has held that a defendant must have "sufficient awareness of the relevant circumstances and likely consequences" of his plea. *Brady v. United States*, 397 U.S. 742, 748 (1970). A plea is voluntary if it is made with full knowledge of its direct consequences, and it will stand unless it is made under duress or as a result of threats, misrepresentations, or improper inducements. *Id.* at 755.

The source of the petitioner's misunderstanding of the sentence consequences, according to his affidavit filed in state court, is an off-the-record conversation with his attorney. The petitioner says that his attorney told him that if he cooperated, he would get less than fifteen years. By generously reading the plea transcript, one could conclude that some confusion was generated by the state prosecutor's description of the plea agreement. During the plea hearing, the prosecutor mistakenly stated that she recommended a fifteen-year *maximum* sentence: "my office has offered a recommendation of a 15 year maximum. . . ." Plea Hr'g Tr. at 4, Feb 11. 2003. However, the court immediately corrected the prosecutor, and stated that the *minimum* sentence would not exceed fifteen years. The court stated, "[a]ctually it would be the minimum sentence would not exceed 15

years." Plea Hr'g Tr. at 4-5, Feb 11. 2003.  Also, the court informed the petitioner that the offense carried a "maximum possible sentence of life in prison. . . ."  Plea Hr'g Tr. at 6, Feb 11. 2003.

The misunderstanding that can result from confusing minimum and maximum sentences is a feature of Michigan's indeterminate sentencing scheme, and it has been the source of discussion in the past.  *See Phipps v. Romanowski*, 566 F. Supp. 2d 638 (E.D. Mich. 2008).  In *Phipps*, this Court noted:

> Michigan uses an indeterminate sentencing scheme for custodial sentences in which the sentencing court sets a minimum term of imprisonment that may be as long as two-thirds of the statutory maximum sentence.  *See* Mich. Comp. Laws § 769.34(2)(b); *People v. Babcock*, 469 Mich. 247, 255 n.7, 666 N.W.2d 231, 237 n.7 (2003) (citing *People v. Tanner*, 387 Mich. 683, 690, 199 N.W.2d 202, 204-05 (1972)).  If the statutory maximum sentence is life in prison, which is not the case, then the sentencing court has discretion to set the maximum term as well.  *See Babcock*, 469 Mich. at 255 n.7, 666 N.W.2d at 237 n.7.  Otherwise, the maximum term is the maximum prescribed by the statute that defines the crime.  *Ibid.*  The Michigan parole board has the discretion to release a prisoner after he has served his minimum sentence.  Mich. Comp. Laws § 791.233(1); *Hopkins v. Michigan Parole Bd.*, 237 Mich. App. 629, 644 n.7, 604 N.W.2d 686, 694 n.7 (1999).  The plea agreement in this case addressed only the minimum sentence. To complete the criminal sentence under the indeterminate sentence law, the sentencing court also must establish a maximum term, which, as noted earlier, is set automatically by statute.
>
> In light of this sentencing scheme, which was not discussed in any detail on the record, it is possible to see how the petitioner and the lawyers were, perhaps, talking past each other when discussing the twenty-month sentence.  When the petitioner asked his lawyer, "No more than 20?" and the lawyer responded "Right," one can see how the petitioner might have been led to believe that he would serve no more than twenty months in prison under all circumstances.  The lawyer's explanation that preceded this exchange – "For the record, 20 months would be the recommended minimum and then you have to serve that. 20 years is just a statutory maximum." – did little to illuminate the situation.

*Id.* at 646.

But the petitioner does not even point to this exchange or assign any blame to the phrasing of the sentencing agreement as a source of his confusion.  He references only the discussion with

-10-

his attorney. This Court, however, is left with a record that suggests otherwise. For a guilty plea to be voluntary, "the defendant need only be aware of the direct consequences of the plea" and "the maximum sentence that could be imposed." *King v. Dutton*, 17 F.3d 151, 153-54 (6th Cir. 1994). There is no question that the record discloses that this information was given to the petitioner. During the plea colloquy, the petitioner stated that no one coerced or pressured him into accepting the plea. The petitioner was informed on multiple occasions that he faced a minimum sentence of fifteen years imprisonment and a maximum sentence of life. The petitioner stated that there were no other promises, threats or inducements made to him which had not been placed on the record.

Moreover, the petitioner raised no questions and voiced no objections at either the plea hearing or sentence hearing about the penalties he faced. He alleges here that because he is a Mexican national and does not have a mastery of the English language, he did not understand the consequences of his plea. However, the petitioner had a translator present at his plea hearing. The petitioner stated at the plea hearing in this case that he had been advised of his constitutional rights and the elements of the charge against him by his attorney and that he was satisfied with his attorney's advice. The trial court then explained that the offense with which the petitioner was being charged was a felony that carries a maximum possible sentence of life in prison or any term of years in prison. The trial court explained to the petitioner that the statute under which he was being charged carried a minimum sentence of at least twenty years in prison. The petitioner stated that he understood. The trial court further explained the features of the plea agreement in detail.

The record at the sentencing hearing also clearly states that the trial court had agreed not to exceed fifteen years as the low end of the minimum sentence. The petitioner's own attorney asked for clarification on the minimum sentence of fifteen years, which was given by the trial court. The petitioner did not object to the sentence recommendation at his plea hearing. If the petitioner was

-11-

laboring under a misapprehension of his maximum sentence exposure from his plea hearing, it is reasonable to infer that he would have addressed that confusion when the facts were made clear at the sentencing hearing.

In ruling on the petitioner's post-conviction motion to withdraw his guilty plea, filed one year later, the trial court determined that there was no defect in its advice to the petitioner that would render the guilty plea involuntary. Viewing the entire state court record, this Court cannot say that the state court's conclusion was plainly incorrect. The record as a whole indicates that the petitioner understood the maximum statutory penalty the trial court could impose. Furthermore, the petitioner made no objection or attempt to withdraw his plea when his attorney asked for clarification of his plea agreement from the trial court.

"Courts naturally look with a jaundiced eye upon any defendant who seeks to withdraw a guilty plea after sentencing on the ground that he expected a lighter sentence." *United States v. Crusco*, 536 F.2d 21, 24 (3d Cir. 1976). The petitioner is not entitled to habeas relief on the grounds that his plea was involuntary or unknowing.

Nor is there any basis for relief in this Court as a result of the refusal of the state trial judge to allow the petitioner to withdraw his plea. There is no federal constitutional right, or absolute right under state law, to withdraw a plea. *United States ex rel Scott v. Mancusi*, 429 F.2d 104, 109 (2d Cir. 1970); *Freeman v. Muncy*, 748 F. Supp. 423, 429 (E.D.Va. 1990); *People v. Bencheck*, 360 Mich. 430, 432, 104 N.W.2d 191, 191-92 (1960); *People v. Harris*, 224 Mich. App. 130, 131, 568 N.W.2d 149, 150 (1997). The decision to permit a defendant to withdraw his plea is committed to the trial court's discretion. *Scott*, 429 F.2d at 109. A trial court's abuse of discretionary authority generally is not a basis for habeas corpus relief. *See Sinistaj v. Burt*, 66 F.3d 804, 808 (6th Cir. 1995) (finding no authority for the proposition that, when a state court abuses its discretion in

denying a defendant's motion to withdraw a waiver of jury trial, the result violates the United States Constitution).

To the extent the petitioner argues that the trial court should have offered him an opportunity to withdraw his plea under Michigan Court Rules 6.302(F) and 6.310(B), this claim is not cognizable on habeas review because it arises under state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). It is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 63 (1991). A federal court is limited on federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Ibid.* Therefore, even if there were some merit to the petitioner's argument that the trial court should have affirmatively offered him an opportunity to withdraw his plea pursuant to Michigan Court Rules 6.310(C) based on an off-the-record discussion in violation of Michigan Court Rule 6.302(F), such error, if indeed there was any, does not justify habeas relief. Therefore, the petitioner's challenge to the decision to deny his motion to withdraw his guilty plea will not justify issuance of the writ.

III.

The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has failed to establish that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt # 1] is **DENIED**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated: February 4, 2009

> **PROOF OF SERVICE**
>
> The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 4, 2009.
>
> s/Felicia M. Moses
> FELICIA M. MOSES